**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**WACO DIVISION**

| | |
|---|---|
| **ANGELIQUE DUNBAR,** | |
| Plaintiff, | |
| | **Case No: 6:25-cv-381** |
| vs. | |
| **USAA FEDERAL SAVINGS BANK,** | **JURY TRIAL DEMAND** |
| Defendant. | |

## <u>COMPLAINT</u>

COMES NOW Plaintiff Angelique Dunbar by and through counsel, and for Plaintiff's causes of action against Defendant USAA Federal Savings Bank ("USAA") states as follows:

1. This is an action for damages arising under the federal Electronic Funds Transfer Act and involving the unauthorized transfer of $1,410 from Plaintiff's bank account with USAA via Zelle.

2. Jurisdiction of this Court arises under 15 U.S.C. 1693m(g) and 28 U.S.C. §1331.

3. Venue lies properly in this district pursuant to 28 U.S.C. §1391(b).

### The Parties

4. Plaintiff is a citizen of the State of Texas.

5. Plaintiff is a retired U.S. Servicemember.

6. Plaintiff resides in Bell County, Texas.

7. Defendant USAA is a state chartered bank in Arizona.[1]

8. Defendant USAA is a financial institution as defined by the EFTA, 15 U.S.C.

---

[1] Zelle, although not a party to this litigation, is a mobile payment company that works with several large banks including USAA to transmit funds from a consumer's bank account, electronically.

1

§1693a(9).

9.      At all times relevant hereto, Defendant USAA was and is engaged in the banking business within the State of Texas.

**Facts**

10.      The EFTA is a federal statute which regulates electronic fund transfers – in particular, preauthorized transfers – initiated by consumers through financial institutions. *See* 15 U.S.C. § 1693 *et seq*.

11.      "The EFTA, like the [Truth-in-Lending-Act] and other [Consumer Credit Protection Act] provisions, is a remedial statute accorded a broad, liberal construction in favor of the consumer." *Bultemeyer v. Fitness Alliance, LLC*, No. CV-12-2619-PHX-LOA, 2014 WL 667585, at *3 (D. Ariz. Feb. 20, 2014).

12.      Plaintiff is a "consumer" as defined by 15 U.S.C. § 1693a(5) and 12 C.F.R. § 205.1(e).

13.      At all times relevant to this action, Plaintiff had a savings and checking account with USAA to which Zelle was attached.  Zelle is the kind of app that is "baked into" the accounts for several institutions.  This means that the consumer does not have the ability to turn this feature off from his account.

14.      On or about May 23, 2025, Plaintiff was contacted by a fraudster posing as an employee of USAA, via text message to her cellphone.  The telephone number that appeared on Plaintiff's caller ID showed the phone number for USAA.

15.      The Fraudster's text message asked if Plaintiff had authorized a $1,000 transfer. Plaintiff immediately responded "no."  Her cellphone rang immediately after her response and the fraudster spoke with Plaintiff.

16.      In their conversation, the first of several, the fraudster represented herself as being

2

from the Defendant's Fraud Department.  The Fraudster gave the Plaintiff a code to use with her Zelle app that is attached to her checking account, in order to "return" the $1,000 to her bank account.

17.    Plaintiff, believing that she was speaking with the Defendant's Fraud Department complied and entered the code she was given into her Zelle app.  The $1,000 was returned to her account.

18.    On or about May 25, 2025, the Fraudster contacted the Plaintiff for the second time. Again, the Fraudster convinced the Plaintiff that $990 was stolen from her account through Zelle. The Fraudster, still posing as a USAA Fraud Department employee, gave the Plaintiff a code to input into her Zelle to "return" the funds.  The Plaintiff complied and the funds were restored to her account.

19.    On May 26, 2025, the Fraudster contacted the Plaintiff for a third time and ran the very same scam on her.  This time, it involved a transaction of $410.

20.    On May 29, 2025, Plaintiff looked at her USAA account and noticed that $2,400 was missing.  There were three fraudulent transactions.  One was May 27, 2025 for $410, the second was on May 23, 2025 for $1,000 and a third was on May 25, 2025 for $990[2].  She panicked and called USAA from her house phone.  She was informed that USAA had never contacted her. At that moment, she knew that she had been scammed by a fraudster.

21.    In her conversation with USAA, she disputed all three transfers as unauthorized.

22.    On June 10, 2025, USAA acknowledged Plaintiff's dispute to the $410 unauthorized withdrawal.

23.    On July 9, 2025, USAA acknowledged Plaintiff's dispute to the $1,000 unauthorized withdrawal.  It also declined her dispute to the $410 unauthorized withdrawal.

---

[2] The Unauthorized $990 withdrawal is not at issue in this case as it was reimbursed by USAA.

24. On July 22, 2025, Plaintiff chats with USAA electronically. She was informed that the bank is investigating both disputes. That same day, USAA issues a letter declining her $1,000 unauthorized charge dispute.

25. On July 23, 2025, Plaintiff again chats with USAA electronically. She notes that both Zelle transfers were allegedly made from her and directed to her. She never received either one.

26. USAA continues to decline both of the Plaintiff's disputes.

27. Both of these transfers are the product of fraud.

28. Plaintiff did not authorize this transfer.

29. Plaintiff did not benefit from this transfer.

30. Plaintiff notified Defendant of the unauthorized and fraudulent transfers immediately.

31. An unauthorized EFT includes a transfer initiated by a person who obtained the access from the consumer through fraud or robbery. See *Official Interpretation 12 C.F.R. §1005.2(m)*.

32. Plaintiff is informed and thereon believes that Defendant USAA undertook an investigation into the unauthorized transfers.

33. Plaintiff has therefore been denied the use and possession of her money, in addition to the time-value of her money.

34. Plaintiff has filed a police report regarding the unauthorized transfer of her money from her USAA Account.

## VIOLATIONS OF THE ELECTRONIC FUNDS TRANSFER ACT

35.     The EFTA places sharp limitations on consumer liability for unauthorized transactions. For example, "If the consumer notifies the financial institution within two business days after learning of the loss or theft of the access device, the consumer's liability shall not exceed the lesser of $50 or the amount of unauthorized transfers that occur before notice to the financial institution." *12 CFR Sec. 1005.6* ("Liability of consumer for unauthorized transfers") *See 15 U.S.C. § 1693g* ("Consumer liability").

36.     Pursuant to the EFTA, *15 U.S.C. Sec. 1693f(a)*, Defendant USAA must conduct an investigation of an authorized transaction once the consumer provides a minimum amount of information.

37.     Specifically, the statute provides in relevant part that:

> [O]nce the consumer provides oral or written notice in which the consumer --
> **(1)**     sets forth or otherwise enables the financial institution to identify the name and account number of the consumer;
> **(2)**     indicates the consumer's belief that the documentation, or, the consumer's account, contains an error and the amount of such error; and
> **(3)**     sets forth the reasons for the consumer's belief (where applicable) that an error has occurred, the financial institution shall investigate the alleged error, determine whether an error has occurred, and report or mail the results of such investigation and determination to the consumer within ten business days. Thus, once the account holder provides (1) the name and account number of the consumer; (2) indicates a belief that there is an error and (3) sets forth the reasons for the belief that there is an error, Defendant USAA must ("shall") investigate.

> *15 U.S.C. §1693f -Error Resolution.*

38.     The EFTA, Section 1693(f) defines "errors" broadly:

> (f) ACTS CONSTITUTING ERROR. --For the purpose of this section, an error consists of--
> (1)     an unauthorized electronic fund transfer;

(2)     an incorrect electronic fund transfer from or to the consumer's account;

(3)     the omission from a periodic statement of an electronic fund transfer affecting the consumer's account which should have been included;

(4)     a computational error by the financial institution;

(5)     the consumer's receipt of an incorrect amount of money from an electronic terminal;

(6)     a consumer's request for additional information or clarification concerning an electronic fund transfer or any documentation required by this title; or

any other error described in regulations of the Bureau.

*See also*, *Regulation E, 12 C.F.R. § 1005.33* ("Procedures for resolving errors"); *Official Interpretation of Regulation E, 11(b)(1) ("Notice of Error From Sender").*

39.     Where a Defendant determines after its investigation that no error has occurred it must provide an explanation and inform the consumer of certain rights.

40.     Account holders' rights under the EFTA are non-waivable. Specifically, *15 U.S. Code § 1693l ("Waiver of rights")* states, in relevant part: "*No writing or other agreement between a consumer and any other person may contain any provision which constitutes a waiver of any right conferred or cause of action created by this subchapter.*"

41.     In this case, USAA failed to conduct a reasonable investigation into the Plaintiff's disputes.  Moreover, USAA failed to provide an explanation of how it arrived at its decision to Plaintiff.

42.     As a direct and proximate result of Defendant USAA 's violations of the EFTA, Plaintiff is entitled to an award of statutory and actual damages as well as attorney's fees and costs.

43.     In addition, Defendant USAA failed to provisionally recredit Plaintiff's account while investigating the unauthorized transfers.

WHEREFORE, Plaintiff respectfully prays that judgment be entered against the Defendant USAA for actual damages and statutory damages pursuant to 15 U.S.C. § 1693m(a)(2)(A); costs and reasonable attorney's fees pursuant to 15 U.S.C. § 1693m(a)(3); and for such other and further

6

relief as may be just and proper.

## JURY TRIAL DEMAND

Plaintiff demands a trial by Jury on all issues so triable.

*Respectfully submitted*,

SCHUMACHER LANE PLLC

DATED: August 20, 2025

/s/ Joshua B. Lane
Joshua B. Lane
Texas Bar No. 24092665
P.O. Box 558
Spring Branch, TX 78070
210-541-2154 ph
210-783-1383 fax
josh@schumacherlane.com
Attorneys for Plaintiff